### UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| MUSIC DEALERS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:12-cv-00712 |
| v. | ) | |
| | ) | Judge Sharon J. Coleman |
| SIERRA BRAVO CORPORATION, | ) | Magistrate Judge Nan R. Nolan |
| | ) | |
| Defendant. | ) | |

### DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS
### MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Pursuant to Fed. R. Civ. P. ("Rule") 9(b), 12(b)(6), 81(c)(2), and other governing rules and case law, Defendant Sierra Bravo Corporation (d/b/a/ "The Nerdery") ("Sierra Bravo" or "Defendant") hereby files its Memorandum of Law In Support Of Its Motion To Dismiss Plaintiff's Complaint (the "Motion"). In support of the Motion, Sierra Bravo states as follows:

### INTRODUCTION

The Court should dismiss the Complaint at Law ("Complaint") filed by Music Dealers, LLC ("Music Dealers"). The Complaint sets forth two counts: "Breach of Contract" (Count I), and "Fraud" (Count II). Music Dealers, however, cannot sustain either of these counts under the unambiguous terms of the parties' contract and governing precedent. Dismissal *with prejudice*, therefore, is necessary.

Music Dealers' contract claims fail on two independent grounds. First, the alleged "breaches" simply are not part of the parties' contract. Instead, the "breaches" consist of alleged failures to satisfy certain "functionality" items in separate, non-contractual "wireframe" documents. In addition, the contract makes clear that the functionality and timing references were "estimates" only, not binding duties on the part of Sierra Bravo.

4843-3324-3662.1

1

Second, the contract claims also fail under the contractual "Limited Warranty." The sole and limited warranty consisted of Sierra Bravo's agreement to correct any defects for thirty (30) days following installation. There are no allegations that Sierra Bravo breached such a warranty. Nor can there be such allegations, or a breach of contract, because Music Dealers cannot allege that it gave Sierra Bravo an opportunity to correct defects as promised. Count I fails for that reason as well.

Moreover, even if Music Dealers could state a contract claim (which it cannot), the parties' contract bars any recovery of consequential damages and caps all damages at the total fees paid over the preceding three months. Music Dealers disregards these limits and seeks consequential damages without any regard for the contractual damages cap. This tactic of ignoring the contract runs throughout the Complaint, but Music Dealers cannot escape the contractual terms and conditions to which it agreed.

Music Dealers' fraud claims also fail as a matter of law. As an initial matter, Music Dealers has failed to plead any fraudulent statement "with particularity," as required by Rule 9(b). But the fraud claim cannot survive in any event. One of the purported representations is a statement of opinion, not fact, and the other pertains to projections of future or contingent events. Neither is actionable. In addition, Music Dealers cannot allege and prove the critical element of reasonable reliance, since the contract contains an integration clause barring such reliance on any statements or discussions outside of the express written contract.

Music Dealers' Complaint is a perfect example of a pleading that, on its face, cannot pass muster under the unambiguous contract terms and governing law. The Court should dismiss the Complaint *with prejudice* and conclude this litigation before Sierra Bravo suffers additional attorneys' fees and costs addressing a fatally and incurably defective pleading.

## ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). It is established that the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555.

Although [t]he Court "must treat all well-pleaded factual allegations in the complaint as true and must draw all reasonable inferences from those allegations in the plaintiffs [sic] favor," the Court "need not, however, 'strain to find inferences favorable to the plaintiffs which are not apparent on the face of the complaint.' Nor is it required to ignore facts set forth in a complaint or exhibits that undermine the plaintiff's claim, much less to accept legal conclusions alleged or inferred from the pleaded facts." *Torrespico v. Columbia College*, No. 97 C 8881, 1998 U.S. Dist. LEXIS 15714, at * 34 (N.D. Ill. Sept. 29, 1998) (Exh. 2) (citations omitted). *See Cushing v. City of Chicago*, 3 F.3d 1156, 1160-61 n.5 (7th Cir. 1993) (holding that "[c]onclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss") (quoting *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir. 1981), *aff'd*, 460 U.S. 325, 103 S. Ct. 1108, 75 L. Ed. 2d 96 (1983)).

## I.     THE PARTIES' CONTRACT DEFEATS MUSIC DEALERS' CONTRACT CLAIMS (COUNT I).

The parties' "Contract," attached to and part of the Complaint, defeats Music Dealers' breach-of-contract claims on several independent grounds. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes"). *See also Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463, 466 (7th Cir. 2007) (granting a motion to dismiss following a review of the parties' contracts, since "[t]o the extent that the contracts contradict the Complaint, the contracts trump the facts or allegations

presented in the Complaint"); *Flannery v. Recording Indus. Assoc. of Am.,* 354 F.3d 632, 638 (7th Cir. 2004) ("this court has long held that, when a document contradicts a complaint to which it is attached, the document's facts or allegations trump those in the complaint").

First, Music Dealers cannot point to any contractual provision that allegedly was "breached." Instead, Music Dealers relies on documents that are not part of the parties' Contract. Second, the Contract includes a "Limited Warranty" that bars Music Dealers' claims. For each of those reasons, the Court should dismiss Count I *with prejudice*. *See Am. Nurses' Assoc. v. State of Illinois*, 783 F.2d 716, 724 (7th Cir. 1986) (recognizing that a plaintiff "may plead himself out of court by including factual allegations which if true show that his legal rights were not invaded"). Even if Music Dealers could sustain a breach-of-contract claim (which it cannot), the Contract precludes Music Dealers from seeking any damages beyond a refund of fees paid for the three months preceding the alleged breach.

### A. The Alleged "Breaches" Are Not Part Of The Contract.

As Music Dealers admits, the "Contract" consists of two documents – a "Master Services Agreement, and a Scope of Work." (Complaint, Exh. 1 attached hereto, at ¶ 6.) Music Dealers attaches those two documents -- and no others – to the Complaint as Music Dealers' and Sierra Bravo's "Contract." (*See id.* at Exhs. A, B.) Moreover, those are the only two documents discussed and defined in the Master Services Agreement as the "Agreement." (Master Services Agreement, Exh. A to the Complaint, at pp. 1-5.)

The Complaint fails to allege a cognizable breach of the Contract. In the section purporting to allege "Breaches of Contract," Music Dealers alleges that "basic and core elements of the Discovery Tool's functionality have not been implemented, and are not present in [Sierra Bravo's] work product." (Complaint, at ¶ 10.) But this allegedly missing "functionality" is not required by

the Contract. Instead, as Music Dealers admits, the "functionality" requirements were "to be set forth in separate 'wireframe' documents, which are schematics that serve as visual guides representing the skeletal framework of a website. In addition, various annotations to the wire frames described key functionality requirements...." (Complaint, at ¶ 7.)

The fatal flaw with the allegations is that the "wireframe" documents are not part of the Contract. Instead, as set forth above, the Contract consists of the Master Services Agreement and a Scope of Work. The Contract also makes clear that the Master Services Agreement and Scope of Work "set forth the entire agreement and understanding between [Sierra Bravo] and [Music Dealers] regarding the subject matter hereof....." (Master Services Agreement, Exh. A to the Complaint, at § 22.) The Scope of Work mentioned that the "flow" of certain functionality would be "detailed in wireframes," but the "wireframes" are not part of the Scope of Work or otherwise incorporated as part of the parties' Contract. (*See* Scope of Work, Exh. B to the Complaint, at p. 2.)

In addition, the Contract is clear that the references to "functionality" were "estimates" only. In particular, the Scope of Work clearly states, before listing the categories of functionality, that they consist of a "summary and itemized *estimate of this project's features and development tasks....*" (*Id.*) (emphasis supplied). As mere "estimates," the referenced "functionality" in the Scope of Work cannot form the basis for a breach-of-contract claim.

Music Dealers tries to, but cannot, ignore the Scope of Work and transform the "wireframe" documents into contractual promises. After admitting that the "wireframe" documents are the source of "key functionality requirements," Music Dealers alleges that Sierra Bravo "stated in words or substance to Music Dealers that the Scope of Work was only intended to serve as a general outline of the services to be provided." (Complaint, Exh. 1 attached hereto, at Exh. A, ¶ 7.) That allegation,

however, contradicts the indisputable fact, admitted by Music Dealers, that the Contract consists solely of the Master Services Agreement and Scope of Work. (*Id.* at ¶ 6.)

Furthermore, the Contract requires that it "may only be modified by the written Agreement of the Parties." (Master Services Agreement, Exh. A to the Complaint, at § 22.) Even if were true that Sierra Bravo "stated in words or substance" that the Scope of Work was just "a general outline," such a statement would have no legal force or effect, and it certainly cannot amend the Contract or incorporate all of the "wireframe" documents as though they were a part thereof.

Nor is there any cognizable breach based on the allegation that "the Discovery Tool Upgrade was not completed by the agreed upon deadline." (Complaint, at ¶ 10.) As with the other alleged breaches, there is no contractual "agreed upon deadline." The Contract simply states that "development *could be* completed by 9/8/11." (Scope of Work, Exh. B to the Complaint, at pp. 1, 13) (emphasis supplied). This is a projection, not a deadline, and it trumps and defeats Music Dealers' allegation that Sierra Bravo "was required to complete the Discovery Tool upgrade by September 8, 2011." (Complaint, at ¶ 8.) *See Custom Foam Works, Inc. v. Hydrotech Systems, Ltd.*, No. 09-CV-0710, 2011 U.S. Dist. LEXIS 30074, at * 8 (S.D. Ill. March 23, 2011) (Exh. 3) ("To sustain a claim for fraud and breach of contract, however, 'the misrepresentations alleged in the pleadings must be more than merely promissory statements about what is to be done in the future; they must be misstatements of material fact or promises made with a present, albeit undisclosed, intent not to perform them'") (citation omitted).

### B. The Contractual Limited Warranty Defeats Music Dealers' Contract Claims.

The parties' Contract includes a "Limited Warranty" that limits Music Dealers' rights and remedies for any alleged "defects" in Sierra Bravo's development work. "A written warranty is a contract, and thus the Court turns to the contract's clear and unambiguous language to determine the

parties' rights and obligations under the limited warranty." *Snyder v. Komfort Corp.*, No. 07 C 1335, 2008 U.S. Dist. LEXIS 60606, at * 11 (N.D. Ill. July 30, 2008) (Exh. 4). The "Limited Warranty" in the Contract, indeed, is clear and unambiguous:

> Provided that the Software was developed under a fixed-bid arrangement, [Sierra Bravo] agrees to correct any defects in Software caused by source code or data developed or modified by The Nerdery at no charge for a period of thirty (30) days following the installation of such Software onto it[s] live server. Client acknowledges and agrees that the determination of the cause of a defect may require additional time to troubleshoot the source of the defect. The time spent to troubleshoot or correct Software flaws which are determined to not have been caused by source code or data developed or modified by [Sierra Bravo] will be billed on a time and materials basis.

(Contract, Exh. A to the Complaint, at § 7.)

The "Limited Warranty" clearly applies to Sierra Bravo's development services, which were based on "a fixed-fee arrangement." (Master Services Agreement, Exh. A to the Complaint, at § 7.) (*See* Scope of Work, Exh. B to the Complaint, at p. 1 (providing that "this project's cost is shown below," and specifying that the fixed fee is "$115,768"); *id.* at p. 13 (stating: "Given the details and assumptions included in the scope of work, this project's cost is shown above," at "115,768"); *id.* (setting forth "payment terms" of fixed amounts over specific milestones and setting forth the "Total of Invoices" at "$115,768").)

The "Limited Warranty" also is exclusive. The Contract includes an express "Warranty Disclaimer" making clear that there are no other contractual representations or warranties beyond the "Limited Warranty" set forth therein:

> EXCEPT AS EXPRESSLY PROVIDED HEREIN, THE NERDERY AND ITS AGENTS, OFFICERS, DIRECTORS, EMPLOYEES, SUCCESSORS, ASSIGNS, AND AFFILIATES PROVIDE THE SERVICES 'AS IS, WITH ALL FAULTS,' AND MAKE NO REPRESENTATIONS OR WARRANTIES OF ANY KIND, EXPRESS OR IMPLIED, AND EXPRESSLY DISCLAIMS ALL

WARRANTIES OF TITLE, MERCHANTABILITY AND FITNESS
FOR A PARTICULAR PURPOSE.

(Contract, Exh. A to the Complaint, at § 8) (all caps in original).

This "Warranty Disclaimer" applies to all of Sierra Bravo's "SERVICES," defined in the

Contract to encompass all of the "computer software consulting and development services" that are

described in the Scope of Work. (Master Services Agreement, Exh. A to the Complaint, at p. 1.)

Music Dealers does not allege that there was any breach of the Limited Warranty. There can

be no such breach unless Sierra Bravo failed to "correct any defects in Software caused by source

code or data developed or modified by [Sierra Bravo] at no charge for a period of thirty (30) days

following the installation of such software only it[s] live server." (Contract, Exh. A to the

Complaint, at § 7.) All of the alleged "breaches of contract," however, are based on allegations that

"basic and core elements of the Discovery Tool's functionality have not been implemented, and are

not present in [Sierra Bravo's] work product." (Complaint, at ¶ 10) (listing certain items that did

"not function" or did "not work properly"). These alleged breaches cannot violate the Limited

Warranty as a matter of law. *Snyder*, 2008 U.S. Dist. LEXIS 60606, at * 13 ("Looking to the plain

language of the 'repair and replacement' limited warranty, the warranty makes no promises about the

quality of the trailer, but instead promises that if a defect in material or workmanship occurs during

the limited warranty's twenty-four month period, [defendant] will repair or replace the part at no cost

to [plaintiff]").

In addition, Music Dealers also fails to allege that it gave Sierra Bravo an opportunity to

satisfy the limited warranty and "correct" any "defects." Music Dealers' breach-of-contract claims

fail for that reason as well. *Snyder*, 2008 U.S. Dist. LEXIS 60606, at * 12 (holding that "to establish

her breach of warranty claim, [plaintiff] must show that she afforded [defendant] an opportunity to

comply with its obligations under the limited warranty and that [defendant] failed to do so").

**C.    The Contract Precludes Music Dealers From Seeking Damages Beyond A Refund Of Fees Paid Over A Three-Month Period.**

As discussed above, Music Dealers cannot escape the clear and unambiguous contractual provisions barring its breach-of-contract claims. Even if Music Dealers could sustain those claims (which it cannot), Music Dealers cannot avoid contractual damages limitations that preclude the recovery of any amounts beyond fees paid to Sierra Bravo over a limited three-month timeframe.

The Master Services Agreement includes a "Limitation of Liability" provision barring Music Dealers from seeking and recovering any: (a) indirect, incidental, consequential, punitive, or special damages; and/or (b) any compensatory damages that exceed amounts paid for three months preceding the alleged breach. Specifically, the "Limitation of Liability" provision states as follows:

> TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW AND REGARDLESS OF WHETHER ANY REMEDY FAILS OF ITS ESSENTIAL PURPOSE, IN NO EVENT SHALL [SIERRA BRAVO] OR ITS AGENTS, OFFICERS, DIRECTORS, EMPLOYEES, SUCCESSORS, ASSIGNS, OR AFFILIATES BE LIABLE TO CLIENT OR ANY OTHER PERSON FOR ANY INDIRECT, INCIDENTAL, CONSEQUENTIAL, PUNITIVE, OR OTHER SPECIAL DAMAGES, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, LOSS OF DATA, LOST TIME, LOST SAVINGS, LOST CONFIDENTIAL OR OTHER INFORMATION, BUSINESS INTERRUPTION, OR FOR ANY MATTER ARISING FROM OR RELATING TO THIS AGREEMENT EVEN IF [SIERRA BRAVO] HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH LOSS OR DAMAGE.    [SIERRA BRAVO'S] AGGREGATE LIABILITY FOR ANY CLAIMS ARISING OUT OF OR RELATING TO THIS AGREEMENT SHALL BE LIMITED TO THE AMOUNT PAID BY CLIENT TO [SIERRA BRAVO] UNDER THIS AGREEMENT FOR THE THREE (3) MONTHS IMMEDIATELY PRECEDING THE EVENTS GIVING RISE TO SUCH CLAIM.

(Contract, Exh. A to the Complaint, at § 8) (all caps in original).

Governing law is clear that this "Limitation of Liability" provision is valid and enforceable.

*See BB Syndication Servs. v. LM Consultants, Inc.*, No. 09-CV-1286, 2011 U.S. Dist. LEXIS 23888,

at *1 (N.D. Ill. Mar. 7, 2011) (Exh. 5) (enforcing a clause capping defendant's liability to the amount of fees paid for its services under Illinois law); *Union Oil Co. v. John Brown E&C,* No. 94 C 4424, 1998 U.S. Dist. LEXIS 2442, at * 9 (N.D. Ill. Feb. 20, 1998) (Exh. 6) (enforcing a "limitation of liability" provision capping "maximum aggregate liability" to a percentage of "aggregate fee paid"). *Accord McClure Eng'g Assocs., v. Reuben H. Donnelley Corp.*, 95 Ill.2d 68, 73, 447 N.E.2d 400, 403 (Ill. 1983) (applying the "wide-spread policy of permitting competent parties to contractually allocate business risks as they see fit").

Music Dealers, therefore, cannot not seek damages beyond "the amount paid" to Sierra Bravo "for the three (3) months immediately preceding the events giving rise to such claim." (Contract, Exh. A to the Complaint, at § 8.) The Court, therefore, should dismiss any claims for consequential or other damages beyond that amount, including any alleged damages because Music Dealers was "unable to pursue economic opportunities because of the delay in completion of the Discovery Tool Upgrade," or "has had existing business relationships jeopardized." (Complaint, at ¶ 14.)

## II. MUSIC DEALERS HAS FAILED TO STATE AN ACTIONABLE FRAUD CLAIM.

This Court has held that, "in order to withstand a motion to dismiss, a complaint must allege facts sufficiently setting forth the essential elements of the cause of action." *Rossi Distributors, Inc. v. Lavazza Premium Coffees Corp.*, No. 01 C 9271, 2002 U.S. Dist. LEXIS 18807, at * 4 (N.D. Ill. Oct. 2, 2002) (Exh. 7). As set forth below, Music Dealers has failed to allege a fraudulent "statement" with the requisite particularity. And even if the "statement" were so alleged, the "statement" is not actionable because it is not a statement of past or existing fact and, in any event, the contractual integration clause prevents Music Dealers from alleging and proving reasonable reliance thereon.

### A.   Music Dealers Has Failed To Plead The Alleged Fraud With Particularity.

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." (Fed. R. Civ. P. 9(b).) *See Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs.,* 536 F.3d 663, 669 (7th Cir. 2008) (holding that "the district court correctly determined that the complaint failed to plead with particularity the who, when and how of the alleged frauds, all of which are required by Rule 9(b) for allegations of fraud"); *JF Enters. v. Fifth Third Bank*, No. 11 CV 3759, 2011 U.S. Dist. LEXIS 132031, at * 10-11 (N.D. Ill. Nov. 15 2011) (Exh. 8) (dismissing a fraud claim because plaintiff failed to "identify the relevant dates, names, locations, and documents, if any documents exist, surrounding the alleged fraud").

The Complaint fails to allege any specific statement that allegedly was false or fraudulent. Instead, the Complaint alleges that, at a "meeting in Chicago," on "April 8, 2001," Sierra Bravo, "through its agents, Matthew Yonan, Rose Lannin, and Melanie Griffin Pugh, stated in words or substance that [Sierra Bravo] had an expert grasp of Drupal, and would have no difficulty meeting Music Dealer's needs." (Complaint, at ¶ 9.)

This is the alleged "statement" on which Music Dealers' entire fraud claim is based. (*Id.* at ¶ 16.) But it is no "statement" at all. Rather, the alleged misrepresentation was conveyed "in words or substance," without any specificity or clarity regarding what was said, by whom, and how the alleged statement was false. Indeed, the allegation asserts that the "statement" was conveyed "in words or substance," indicating that the "statement" may have been Music Dealers' interpretation of another comment (or perhaps even a non-verbal cue). This type of alleged misrepresentation – an amorphous "statement" in "words or substance" – lacks the requisite specificity under Rule 9(b).

**B.    Even If The Complaint Set Forth A Specific "Statement," The Alleged Misrepresentation Is Not Factual.**

Even if Sierra Bravo expressly stated that it "had an expert grasp of Drupal and would have no difficulty meeting Music Dealers' needs," that "statement" cannot form the basis of a fraud claim. "A 'statement which is merely an expression of opinion or which relates to future or contingent events, expectations or probabilities, rather than to pre-existent or present facts, ordinarily does not constitute an actionable misrepresentation' under Illinois law." *Continental Bank, N.A. v. Meyer*, 10 F.3d 1293, 1298 (7th Cir. 1993) (citations omitted).

The alleged "statement" is not factual or actionable under these principles.  Whether Sierra Bravo "had an expert grasp of Drupal" is a matter of opinion, not a definitive statement of some pre-existing or present fact.  *See Neptuno Treuhand-Und Verwaltungsgesellschaft MBH v. Arbor*, 295 Ill. App. Ct. 3d 567, 571, 692 N.E.2d 812, 816 (1st Dist. 1998) (holding that a representation is a matter of opinion if it "only expresses the speaker's belief, without certainty, as to the existence of a fact").

There also is no basis for claiming fraud based on an alleged "statement" that Sierra Bravo "would have no difficulty meeting Music Dealers' needs."  That alleged "statement," on its face, "relates to future or contingent events, expectations or probabilities, rather than to pre-existent or present facts…."  *Continental Bank*, 10 F.3d at 1298.  As such, the alleged statement "does not constitute an actionable misrepresentation under Illinois law."  *Id.*

**C.    Music Dealers Cannot Reasonably Rely On The Alleged "Statement" As A Matter Of Law Based On The Contractual Integration Provision.**

It is axiomatic that justifiable or reasonable reliance is an "essential element" of a fraudulent-inducement claim.  *Security Ctr. v. Kozak*, No. 94 C 6707, 1995 U.S. Dist. LEXIS 6540, at * 19 (N.D. Ill. May 16, 1995) (Exh. 9).  Moreover, there can be no reasonable reliance if the parties'

contract includes an integration clause expressly excluding any statements or representations outside the contract's express terms. *See Donovan v. ABC-NACO, Inc.,* No. 02 C 1951, 2002 U.S. Dist. LEXIS 12797, at * 18-20 (N.D. Ill. July 12, 2002) (Exh. 10) (dismissing a fraud claim because of a contractual integration clause, under which plaintiffs "agreed that such statements outside the four corners of the Asset Purchase Agreement would not form the basis of any liability on the part of Defendants," since the "agreement not to hold Defendants liable based on any statements outside the four corners of the agreement 'negates the element of reasonable reliance'") (citations omitted). *See also Rissman v. Rissman,* 213 F.3d 381, 384 (7th Cir. 2000) (holding that "a written anti-reliance clause precludes any claim of deceit by prior representations"); *Reis Robotics USA, Inc. v. Concept Industries, Inc.,* 462 F. Supp. 2d 897, 909 (N.D. Ill. 2006) (applying *Rissman* to bar fraud claims based "on the presence of the non-reliance clause in conjunction with a provision that clearly contradicted the plaintiff's prior statement").

The Master Services Agreement includes an integration provision that is broad and comprehensive: "This Agreement, Exhibits, and Statements of Work set forth the entire agreement and understanding between [Sierra Bravo] and Client regarding the subject matter hereof and ***supersedes any prior representations, advertisements, statements, proposals, negotiations, discussions, understandings, or agreements regarding the same subject matter.***" (Master Services Agreement, Exh. A to the Complaint, at § 22) (emphasis supplied).

This integration provision precludes Music Dealers from alleging and proving that it reasonably relied on the alleged "statement" that Sierra Bravo "had an expert grasp of Drupal," or that it "would not have entered into the Contract had [Sierra Bravo] not possessed the claimed Drupal expertise...." (Complaint, at ¶¶ 16, 18.) Such an alleged "statement" was expressly excluded under the integration clause. In addition, the Contract *expressly contradicted* any such

"statement." As alleged in the Complaint, Drupal is "a website content management system necessary for completion of the Discovery Tool Upgrade." (Complaint, Exh. A, at ¶ 9.) The Contract, however, makes it abundantly clear that Sierra Bravo "makes no representations or warranties of any kind with respect to third-party software or services." (Scope of Work, Exh. B to the Complaint, at p. 12.) Accordingly, Music Dealers cannot allege or prove that it reasonably relied on a "statement" that was expressly excluded from, and contradicted by, the Contract.

<u>CONCLUSION</u>

WHEREFORE, for the reasons set forth above and in the Motion, Sierra Bravo respectfully requests that the Court: (a) grant the Motion; (b) dismiss Music Dealers' Complaint *with prejudice*; (c) award Sierra Bravo its attorneys' fees as permitted and provided for a prevailing party in the Contract (*see* Exh. A to the Complaint, at § 19); and (d) grant such further relief as the Court deems just and appropriate.

Dated: February 8, 2012

Respectfully submitted,

LEWIS BRISBOIS BISGAARD & SMITH

By: _____

One of the Attorneys for Defendant

Hillard M. Sterling, Esq. ARDC No. 6232655
Nicole R. Sorell, Esq., ARDC No. 6307055
**LEWIS BRISBOIS BISGAARD & SMITH LLP**
550 West Adams Street, Suite 300
Chicago, Illinois 60661
Phone: 312-463-3410
Fax: 312-345-1778
Email: hsterling&lbbslaw.com