# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MUSIC DEALERS, LLC, | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) |
| | )   Case No. 1:12-cv-00712 |
| SIERRA BRAVO CORPORATION, | ) |
|     Defendant. | )   Judge Sharon Johnson Coleman |
| | )   Magistrate Judge Jan R. Nolan |
| | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Music Dealers, LLC ("Music Dealers"), a music licensing company, brings forth this matter against Defendant, Sierra Bravo Corporation d/b/a The Nerdery ("Defendant" or "The Nerdery"), a software development company, alleging breach of contract and fraud. Defendant moves to dismiss Plaintiff's breach of contract claim for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). Additionally, Defendant moves to dismiss Plaintiff's fraud claim for failure to meet the heightened pleading standards required pursuant to Fed. R. Civ. P. 9(b) and, in the alternative, for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). Defendant further argues against the consequential damages sought by Plaintiff as barred by the limited liability provision of the parties' agreement. For the foregoing reasons Defendant's motion to dismiss Plaintiff's breach of contract and fraud claims is denied. Defendant's motion to limit the damages sought by Plaintiff in accordance with the limited liability provision found in the parties' contract agreement is granted.

**BACKGROUND**

The following facts are taken from the pleadings and all inferences have been drawn in favor of the non-movant, Plaintiff, Music Dealers. Music Dealers is a music licensing company based in Illinois that operates a website where users can search and download music from unsigned artists. The key component of this website is the "discovery tool application," which allows users to search for music on the site. In early 2011, Music Dealers entered into discussions with Defendant, The Nerdery, a Minnesota software development company, about developing an upgrade to the discovery tool application.

On April 8, 2011, at a meeting in Chicago, Defendant, through its agents, Matthew Yonan, Rose Lannin, and Melanie Griffin Pugh, told Music Dealers' agents that The Nerdery possessed expertise in a software application called Drupal that was necessary in order to complete the project. Defendant's agents also gave assurances to Music Dealers that The Nerdery would "have no difficulty meeting [Music Dealers] needs" in regards to the project. Subsequently, Music Dealers agreed to utilize The Nerdery's services for the project. Music Dealers contends that it would not have entered into such an agreement were it not for Defendant's assurances about The Nerdery's expertise with Drupal and capability to complete the project successfully.

Attached to the complaint are two documents, a "Master Services Agreement" ("MSA") and "Scope of Work," ("SOW") (collectively, "the writings") which were executed by the parties on July 19, 2011. The SOW states an "estimated" project cost of $115,768, of which fifty-percent (50%) was due in order for the project to begin. (Compl., Ex. B, p.13). The SOW also includes a list of the "project's features and development tasks," including "design integration" and "functionality" of several different components. (*Id.* at p.14). Next to each of the specific functionalities listed on page two of the SOW is a parenthetical stating "flow detailed in wireframe." (*Id.*) "Wireframe" refers to separate documents that show how each of the specific functionalities of the program operates within the framework of the website. (Comp. ¶5, 7). Music Dealers alleges that Defendant stated "in numerous conferences and planning sessions" that the SOW was only intended to serve as a general outline of the services to be provided and that the wireframe documents would describe the work to be performed in more detail. (*Id.* ¶7).

The project was not completed by September 8, 2011, the projected completion date provided for in the parties' agreement. (*Id.* ¶8, 10). On September 15, 2011, Simon Banks of The Nerdery stated to Joshua Burke of Music Dealers that "upon completion of the project we will have to have a post morten (sic) review why this project failed in such a manner." Banks apologized and stated that "[The Nerdery] did not normally work in such a manner." (*Id.* ¶11). Following completion of the contract and payments in excess of $115,000 made by Music Dealers to The Nerdery, Music Dealers discovered that various aspects of the final product were either not working properly or missing altogether. (*Id.* ¶10).

On December 13, 2011, Music Dealers filed a Complaint in the Law Division of the Circuit Court of Cook County, Illinois. On February 1, 2012, Defendant removed that case to this Court. On February 8, 2012, Defendant filed a Motion to Dismiss Music Dealers' two-count Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). Count I of the Complaint alleges breach of contract based on various allegations regarding defective and missing functions in the final product and Defendant's failure to meet the agreed upon deadline for its completion. Count II alleges fraud regarding the statements made by The Nerdery's agents at the April, 2011 meeting regarding The Nerdery's expertise and capability to meet Music Dealers' needs.

Defendant argues that Count I should be dismissed because the alleged breaches were not part of the contract. Defendant contends that the contract was only an "estimate or projection" and that the limited warranty clause defeats Music Dealers' breach of contract claim. Additionally, Defendant argues that Count II should be dismissed because Music Dealers failed to plead fraud with the specificity required pursuant to Fed. R. Civ. P. 9(b). In the alternative, Defendant advances a 12(b)(6) argument, contending that the alleged fraudulent statement is insufficient to support a fraud claim as a matter of law and that the statement itself is barred by the contract's integration clause.

In response to Defendant's motion, Music Dealers argues that the contract is facially ambiguous and that the Court should consider extrinsic documents, specifically the "wireframe" documents, in order to ascertain the parties' intent and the scope of the agreement. In particular, Music Dealers contends that the writings are ambiguous as to whether the parties intended to

incorporate the wireframe documents into their agreement, and further, assert that the wireframe documents are incorporated into the SOW by reference.

## LEGAL STANDARDS

**12(b)(6) Motion to Dismiss for Failure to State a Claim**

A complaint must set forth sufficient factual material, taken as true, to raise the plaintiff's right to relief "above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In order to survive a motion to dismiss, the complaint must, on its face, contain sufficient factual material for the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, U.S., 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations stated in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). A Rule 12(b)(6) motion must be decided solely on the face of the complaint and any attachments that accompanied its filing. *Miller v. Herman*, 600 F.3d 726, 733 (7th Cir. 2010) (citing Fed. R. Civ. P. 10(c)). Documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim. *McCready v. EBay, Inc.*, 453 F.3d 882 (7th Cir. 2006) (citing Fed. R. Civ. P. 12(b)(6)). When a document contradicts a complaint to which it is attached, the document controls. *Flannery v. Recording Indus. Assoc. of Am.*, 354 F.3d 632, 638 (7th Cir. 2004).

**9(b) Heightened Pleading Standard**

The heightened pleading standard set forth in Rule 9(b) requires that in all allegations of fraud, "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This heightened pleading standard for claims involving fraud requires a party to plead "the who, what, when where, and how: the first paragraph of any newspaper story." *U.S. ex rel. Lusby v. Rolls–Royce Corp.,* 570 F.3d 849, 853 (7th Cir. 2009). The particularity requirement of Rule 9(b) is designed to discourage a "sue first, ask questions later" philosophy. *Pirelli*

*Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.,* 631 F.3d 436, 441 (7th Cir. 2011).

## DISCUSSION

### I. Breach of Contract[1]

As an initial matter, the parties have agreed that Illinois law governs this dispute, therefore this Court will apply Illinois law to the substantive issues in this case. (Compl., ¶ 3; Ex. A at ¶18). Under Illinois law, the elements for breach of contract are: "(1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of the contract by the defendant; and (4) resultant injury to the plaintiff." *Nielsen v. United Servs. Auto. Ass'n,* 244 Ill.App.3d 658, 662, 612 N.E.2d 526, 529 (2d Dist.1993). Defendant argues that the MSA and SOW constitute the entire contractual agreement between the parties and Music Dealers has failed to allege that Defendant breached any contractual duty contained in these documents. Music Dealers responds that Defendant's breached certain provisions included in the wireframe documents and that these documents were incorporated by reference into the SOW, resulting in the Defendants liability for breach of contract. Based on the arguments made by both parties, the initial issue before the Court is whether the wireframe documents can be considered part of the parties' contractual agreement.

To determine what constitutes a contract, Illinois applies the four corners rule, which bars consideration of extrinsic evidence when the contract is facially unambiguous and fully integrated. <u>TAS Distributing Co., Inc. v. Cummins Engine Co., Inc.,</u> 491 F.3d 625, 636 (7th Cir. 2007) (citing <u>Air Safety, Inc. v. Teachers Realty Corp.,</u> 185 Ill.2d 457, 706 N.E.2d 882 (1999)).

---

[1] Defendant argues that the "limited warranty" and "warranty disclaimer" provisions defeat Plaintiff's breach of contract claims. Pursuant to the Limited Warranty, The Nerdery "agrees to correct any defects in the Software caused by source code or data developed or modified by The Nerdery at no charge for a period of thirty (30) days following the installation of such software onto its live server." (Compl. Ex. A, ¶7). The Statement of Work also includes a "warranty disclaimer" paragraph providing that the limited warranty provision is exclusive. (*Id*. ¶8). Music Dealers does not allege any breach of warranty claims nor does either party make any allegations that the Plaintiff failed to provide the Defendant with an opportunity to correct any defects in the software update. Accordingly, the Court will not address Defendant's argument that there can be no such breach.

Therefore, this Court can only consider the wireframe documents as part of the parties' agreement if the MSA or SOW are not fully integrated or if they are ambiguous.

Music Dealers argues that the Statement of Work integrates the wireframe documents by reference; and that because the Statement of Work is the prevailing document, the Court should allow consideration of the wireframe Documents in the breach of contract claim. Under Illinois law, "[f]or a contract to incorporate all or part of another document by reference, the reference must show an intention to incorporate the document and make it part of the contract." *Wilson v. Wilson,* 217 Ill. App. 3d 844, 577 N.E.2d 1323, 1329 (Ill. App. Ct. 1991). The party seeking to enforce the terms of an allegedly incorporated document must show an intention to incorporate the document and make it a part of the contract. *Arneson v. Bd. of Trustees, McKendree Coll.,* 210 Ill. App. 3d 844, 569 N.E.2d 252, 256 (1991). "Mere reference to another contract or document is not sufficient to incorporate its terms into a contract. There must be express intent to incorporate." *Rosenblum v. Travelbyus.com, Ltd.*, 299 F. 3d 657, 665 (7th Cir. 2002).

Here, the wireframe documents are referenced solely on page two of the Scope of Work, under the heading, "Project Features." (Compl., Ex. B, p.14). Next to each of the functionality components of the project features, the document states "flow detailed in wireframes" in parentheticals. (*Id*.) While the wireframe documents undoubtedly provide a better picture of what each of those functions would look like, nowhere does the contract indicate an express intent to incorporate those documents into the agreement, in compliance with Illinois law. Based on the reasoning of the Seventh Circuit, this Court finds that the wireframe documents were not incorporated by reference because there is no express intent to incorporate the wireframe documents contained within the contract.

As it has been determined that the contract is fully integrated and that the wireframes are not incorporated into the SOW by reference, the Court may only consider the wireframe documents if the contract is facially ambiguous. Under Illinois law, if the contract is ambiguous, as a matter of law, extrinsic and parol evidence is admissible to explain the terms of the ambiguous contract. *Sunstream Jet Exp. Inc. v. Int'l Air Service Co., Ltd.*, 734 F. 2d 1258, 1266 (7th Cir. 1984). Music Dealers' complaint alleges that provisions of the contract concerning the Defendant's obligations relating to functionality are ambiguous and that the Court should allow the admission of parol evidence to ascertain the parties' intentions. Defendant argues that

the writings unambiguously state the parties' contractual duties and any references to "functionality" were mere "estimates" that created no formal obligations.

There is certainly more than one reasonable interpretation of the term "functionality," and absent any further specifications, it is impossible to ascertain The Nerdery's contractual obligations regarding functionality of the final product. The contract contains no definition of the term "functionality." Further, it is possible that a finder of fact could determine that the parties each had varying means for the Defendant's obligation to provide a functional product. Therefore, this Court finds that the contract is ambiguous on its face and that parol evidence in the form of the wireframe documents should be considered in order to determine the Defendant's contractual obligations.

Moreover, the standard of commercial reasonableness may also be used to determine if a contract is ambiguous. *See Fox v. Commercial Coin Laundry Systems,* 325 Ill.App.3d 473, 757 N.E.2d 529, 532 (Ill. 2001). Illinois courts avoid interpretations that render a contract "inequitable, unusual, or such as reasonable men would not be likely to enter into." *Nutrasweet Co. v. Am. Nat'l Bank & Trust Co.*, 262 Ill.App.3d 688, 635 N.E.2d 440, 444-45 (1994). "Where a contract is susceptible to one of two constructions, one of which makes it fair, customary, and such as prudent men would naturally execute, while the other makes it inequitable, unusual, or such as reasonable men would not be likely to enter into, the interpretation which makes a rational and probable agreement must be preferred." *Id.*

Relying on the principle of commercial reasonableness, this Court is not persuaded by Defendant's argument that the "functionality" was intended to be a mere projection. Music Dealers alleges the following "material breaches" regarding the functionality of the software: the third column of the filter option is missing entirely, the shared playlists do not function, the playlist page share option does not function, the song rating functionality component is missing, the song play count is missing, various functionalities do not work properly, and that the filter tags are improperly grouped. (Compl. ¶10). A reasonable person would not likely enter into a contract where they are required to pay at least $115,768 for development of a software update that allegedly fails to perform such tasks as listed above. Music Dealers has pled sufficient facts, which if proven, render them entitled to relief. Therefore, this Court finds that a triable issue of

fact exists as to the scope of Defendant's contractual duties and whether Defendant breached such a duty.

**II.     Fraud**

Defendant also argues that that count II of Music Dealers' complaint alleging fraud should be dismissed for failure to plead with sufficient particularity pursuant to Fed. R. Civ. P. 9(b). The heightened pleading standard for fraud claims under 9(b) requires a party to plead "the who, what, when where, and how: the first paragraph of any newspaper story." *U.S. ex rel. Lusby v. Rolls–Royce Corp.,* 570 F.3d 849, 853 (7th Cir. 2009).

The factual allegations of Music Dealers' fraud claim are as follows:

> In order to induce Music Dealers to enter into the Contract, the Nerdery repeatedly made material misrepresentations about its expertise in Drupal, a website content management system necessary for the completion of the Discovery Tool Upgrade. Specifically, on Friday, April 8, 2001 (sic) at a meeting in Chicago, The Nerdery, through its agents, Matthew Yonan, Rose Lannin, and Melanie Griffin Pugh, stated in words or substance that The Nerdery had an expert grasp of Drupal and would have no difficulty meeting Music Dealers' needs.

(Compl. ¶9).

Defendant solely disputes the "what," arguing that Plaintiff's use of the phrase "words or substance" in their complaint fails to allege any specific statement that was purportedly false or fraudulent because "words or substance" could include non-verbal statements. This Court disagrees. On a motion to dismiss for failure to meet the heightened pleading standard under Federal Rule of Civil Procedure 9(b) governing claims sounding in fraud, the Court accepts the Plaintiff's factual allegations as true and draws all reasonable inferences in its favor. *JF Enterprises, LLC v. Fifth Third Bank*, 824 F. Supp. 2d 818 (N.D. Ill. 2011). Applying this standard in this case, the Court determines the use of the phrase "in words or substance" reasonably infers that there were verbal assertions made amounting to a statement that The

Nerdery possessed expertise in Drupal, albeit not necessarily in the exact words quoted. Thus, the Court finds that Music Dealers complaint is sufficiently pled to withstand dismissal under 9(b). Defendant's Motion to Dismiss Count II pursuant to Rule 9(b) is denied.

Defendant further argues that, in the event Count II is adequately pled, it should be dismissed for failure to state a claim. Under Illinois law, the elements a plaintiff must allege to establish common law fraud are: "(1) a false statement of a material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Davis v. G.N. Mortg. Corp.,* 396 F.3d 869, 881-82 (7th Cir. 2005) (citing *Capiccioni v. Brennan Naperville, Inc.,* 339 Ill.App.3d 927, 791 N.E.2d 553, 558 (Ill. 2003)).

First, Defendant argues that the alleged statements cannot form the basis of a fraud claim because they were merely expressions of opinion. However, what appears to be a statement of opinion nevertheless may be a statement of fact when considered in context. *Costello v. Grundon*, 651 F. 3d 614, 639 (7th Cir. 2011). Therefore, this Court cannot say that the alleged fraudulent statements were statements of opinion as a matter of law without sufficient context.

Defendant also argues that the alleged fraudulent statements are not actionable because they refer to a future event, rather than a present fact. The Court finds that a statement that "The Nerdery has an expert grasp in Drupal" was a statement regarding a present condition. Only further discovery will determine the exact nature of the underlying facts of Music Dealers' fraud claim. Therefore, this Court cannot say that there is no set of factual circumstances under which Music Dealers could prove their fraud claim.

Defendant presents a final argument that the integration clause of the MSA bars Music Dealer's fraud claim. Defendant contends that the integration clause included in the Master Services Agreement precludes Music Dealers from alleging that it reasonably relied on the alleged statement that Defendant's had an expert grasp of Drupal. However, under Illinois law, "an integration clause in a contract will not preclude a plaintiff from relying on extrinsic evidence in order to establish a cause of action for fraud." *Vigortone AG Products, Inc. v. PM AG Products, Inc.*, 316 F.3d 641, 644 (7th Cir. 2002). Fraud is a tort, and the parol evidence rule

9

is not a doctrine of tort law. *Id.* at 644-645. Therefore, Defendant's motion to dismiss Count II is denied.

### III. Applicability of Limitation of Damages Provision

Defendant argues that the contract contains a limitation of damages provision barring Music Dealers' request for consequential damages. The relevant portion of the contract states as follows:

> Limitation of Liability. TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW AND REGARDLESS OF WHETHER ANY REMEDY FAILS OF ITS ESSENTIAL PURPOSE, IN NO EVENT SHALL THE NERDERY…BE LIABLE TO CLIENT OR ANY OTHER PERSON FOR ANY INDIRECT, INCIDENTAL CONSEQUENTIAL, PUNITIVE, OR OTHER SPECIAL DAMAGES.

(Compl. Ex. A ¶9).

The Court finds that the foregoing clause is clear and unambiguous, and therefore binding upon the parties. Nonetheless, an improper damages request does not result in dismissal of the entire claim. Therefore, the Court denies Plaintiff's request for consequential damages, but allows the matter to proceed beyond this stage.

### CONCLUSION

Defendant's motion to dismiss Plaintiff's breach of contract and fraud claims pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b) is denied. Defendant's motion to limit the damages sought by Plaintiff in accordance with the limited liability provision found in the parties' contract agreement is granted.

IT IS SO ORDERED.

Date: September 10, 2012      Entered: _____

Judge Sharon Johnson Coleman