IN THE UNITED STATES DISTRICT COURT OF
THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MUSIC DEALERS, LLC, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) Case No. 12 CV 712 |
| SIERRA BRAVO CORPORATION, | ) ) Hon. Sharon J. Coleman |
| Defendant. | ) ) Magistrate Judge Nan R. Nolan ) ) |

**SIERRA BRAVO CORPORATION'S ANSWER, AFFIRMATIVE DEFENSES, AND
COUNTERCLAIMS TO MUSIC DEALERS LLC'S COMPLAINT AT LAW**

Pursuant to 28 U.S.C. § 1332, 28 U.S.C. § 1367, Fed. R. Civ. P. ("Rule") 8(b), Rule 12(a)(4), Rule 13, and other governing rules and case law, Sierra Bravo Corporation (d/b/a "The Nerdery") ("Sierra Bravo"), by and through its attorneys, LEWIS BRISBOIS BISGAARD & SMITH LLP, presents its Answer, Affirmative Defenses, and Counterclaims to Music Dealers LLC's Complaint at Law ("Complaint"), states as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff, Music Dealers, LLC ("Music Dealers"), is a limited liability company organized under the laws of the State of Illinois. It is a music licensing company, which operates the website, www.musicdealers.com.

**ANSWER:** Sierra Bravo has insufficient knowledge or information to form a belief about the truth of the allegations in Paragraph 1 of the Complaint, and demands strict proof thereof.

2. Defendant, Sierra Bravo Corporation ("The Nerdery"), is a corporation organized under the laws of the State of Minnesota. It is a software consulting company that conducts business under the trade name The Nerdery.

**ANSWER:** Admitted.

3. Jurisdiction over this case is proper in Illinois because the conduct complained of occurred in this State, and the parties have consented to the jurisdiction of Illinois courts.

**ANSWER:** Admitted.

4. Venue is proper in Cook County because the conduct complained of occurred here, and the parties have consented to this venue.

**ANSWER:** Admitted.

## FACTUAL BACKGROUND

*A Music Dealers's business, and the Discovery Tool Upgrade*

5. Central to Music Dealers's business is a technological application, which allows users to search and license music from pre-licensed, unsigned artists working with it ("the Discovery Tool"). The Discovery Tool is accessed through www.musiodealers.com.

**ANSWER:** Sierra Bravo has insufficient knowledge or information to form a belief about the truth of the allegations in Paragraph 5 of the Complaint, and demands strict proof thereof.

6. In or about July of 2011, The Nerdery offered to provide certain services to MusicDealers by which it would design and develop an upgrade to the Discovery Tool ("the Discovery Tool Upgrade"), Music Dealers accepted The Nerdery's offer, and the parties further exchanged certain promises and executed certain writings that included a Master Services Agreement, and a Scope of Work. The parties thus formed a valid and enforceable contract ("the Contract"), True and accurate copies of the Master Services Agreement and the Scope of Work are attached hereto as Exhibits A and B, respectively.

**ANSWER:** Sierra Bravo admits that it offered to, and did, provide services to Music Dealers in connection with the design and development of an upgrade to the Discovery Tool, and that the parties made certain promises and executed documents consisting of a Master Services Agreement and a Scope of Work, which formed a valid and enforceable contract. Sierra Bravo further admits that true and accurate copies of the Master Services Agreement and the Scope of Work are attached to the Complaint as Exhibits A and B, respectively.

7. Under the Contract. the Nerdery was required to provide services for Music Dealers "as described in one or more Estimates, Proposals, Project Plans, or Statements of Work." (Ex. A, ¶ 1). Although not referenced in the Master Services Agreement, a Scope of Work describes the services to be performed by The Nerdery as follows:

2

- Design integration;
- Search functionality;
- Song rating functionality;
- Song play count functionality;
- Song note functionality;
- Genre functionality;
- Song genre functionality;
- Song functionality;
- Playlist functionality; and
- Play list song functionality

(Ex. B, p. 2). Under the Scope of Work, the detailed contractual requirements of various components was to be set forth in separate wireframe" documents, which are schematics that serve as visual guides representing the skeletal framework of a website. In addition, various annotations to the wire frames described key functionality requirements; and in numerous conferences and planning sessions, The Nerdery stated in words or substance to Music Dealers that the Scope of Work was only intended to serve as a general outline of the services to be provided.

**ANSWER:** Sierra Bravo admits that, under the Services Agreement, subject to the payment of fees set forth in Section 4 thereunder, Sierra Bravo agreed to provide Services for Music Dealers as described in the Scope of Work. Sierra Bravo further admits that the Scope of Work provided a summary and estimate of the project's features and development tasks subject to certain conditions and assumptions. Sierra Bravo admits that the wireframe documents contained schematics and annotations regarding functionality, but Sierra Bravo denies that the wireframe documents set forth "detailed contractual requirements of various components." Sierra Bravo denies the remaining allegations in Paragraph 7 of the Complaint.

8. Music Dealers has been actively promoting the introduction of the redesigned Discovery Tool to the marketplace at various events and conferences, and its existing and prospective customers have based further commercial dealings with Music Dealers on its availability. Because of the importance of the Discovery Tool to the business of Music Dealers, The Nerdery was required to complete the Discovery Tool Upgrade by September 8, 2011.

**ANSWER:** Sierra Bravo has insufficient knowledge or information to form a belief about the truth of the allegations in the first sentence of Paragraph 8 of the Complaint, and demands strict proof thereof. Sierra Bravo denies the remaining allegations in Paragraph 8 of the Complaint.

*B*     *The Nerdery's Misrepresentations and Breaches of Contract.*

9.    In order to induce Music Dealers to enter into the Contract, the Nerdery repeatedly made material misrepresentations about its expertise in Drupal, a website content management system necessary for completion of the Discovery Tool Upgrade. Specifically, on Friday, April 8, 2001 at a meeting in Chicago, The Nerdery, through its agents, Matthew Yonan, Rose Lannin, and Melanie Griffin Pugh, stated in words or substance that The Nerdery had an expert grasp of Drupal, and would have no difficulty meeting Music Dealers's needs.

**ANSWER:**     Sierra Bravo admits that, on April 8, 2011 (not April 8, 2001, as alleged), there was a meeting in Chicago attended by Matthew Yonan, Rose Lannin, and Melanie Griffin Pugh. Sierra Bravo denies the remaining allegations in Paragraph 9 of the Complaint.

10.    Notwithstanding Music Dealers's payments to the Nerdery in excess of $115,000, The Nerdery failed to perform its .obligations under the Contract. Specifically, basic and core elements of the Discovery Tool's functionality have not been implemented, and are not present in The Nerdery's work product. In addition, the following constitute further material breaches of the Contract:

- the third column of the Discovery Tool's filter options is missing entirely;
- the Discovery Tool's shared playlists do not function;
- the Discovery Tool's playlist page share option does not function;
- the Discovery Tool's song rating functionality is missing;
- the Discovery Tool's song play count is missing;
- the Discovery Tool's genre functionality, song genre functionality;
- and song functionality do not work properly;
- Filter tags are not grouped properly; and
- the Discovery Tool Upgrade was not completed by the agreed upon deadline

**ANSWER:**     Sierra Bravo denies that Music Dealers made payments to Sierra Bravo in excess of $115,000.00, and Sierra Bravo also denies that Music Dealers paid Sierra Bravo all fees to which Sierra Bravo is entitled. Sierra Bravo admits that the Discovery Tool did not include certain elements of functionality identified in Paragraph 10 of the Amended Complaint, but Sierra Bravo denies that Paragraph 10 includes a true and accurate list of allegedly missing functionality. Sierra Bravo also denies that it failed to implement "basic and core elements of the Discovery Tool's functionality" in a manner contrary to the parties' discussions and

4

understandings, and Sierra Bravo further denies that any such alleged failure to implement constituted a material breach of the parties' contract.

11. Following the deadline for the Nerdery's completion of the Discovery Tool Upgrade, it even acknowledged and admitted its breaches of the Contract. Specifically, on September 15, 2011, The Nerdery, through Simon Banks, stated to Music Dealers, through Joshua Burke, that upon completion of the project "we will have a post mortem to review why this project failed in such a manner," The Nerdery, through Simon Banks, further apologized, and stated that it did not "normally work in such a manner."

**ANSWER:** Sierra Bravo admits that, on or around September 15, 2011, Simon Banks and Joshua Burke engaged in a telephone conversation during which Mr. Burke offered to have a project review so that both Music Dealers and Sierra Bravo could address and learn from the project's challenges and successes. Sierra Bravo denies the remaining allegations in Paragraph 11 of the Complaint.

## COUNT I
## (BREACH OF CONTRACT)

12. Music Dealers incorporates by reference the allegations contained in Paragraphs 1 through 11 of its Complaint as if fully set forth herein.

**ANSWER:** Sierra Bravo incorporates its answers to the allegations in Paragraphs 1 through 11 as if fully set forth herein.

13. Music Dealers has performed all obligations required of it under the Contract; specifically, it has paid the Nerdery in excess of $115,000.

**ANSWER:** Sierra Bravo denies that Music Dealers has paid Sierra Bravo in excess of $115,000, and Sierra Bravo denies the remaining allegations in Paragraph 13 of the Complaint.

14. The Nerdery's conduct alleged herein constituted material breaches of the Contract, which proximately caused Music Dealers harm. Specifically, it has paid for services not performed, has been unable to pursue economic opportunities because of the delay in completion of the Discovery Tool Upgrade, and has had existing business relationships jeopardized.

**ANSWER:** Sierra Bravo denies the allegations in Paragraph 14 of the Complaint.

WHEREFORE, Plaintiff, Music Dealers, LLC, prays that judgment be entered in its favor and against Defendant, Sierra Bravo Corporation, in an amount to be determined at trial, but in no event less than $50,000.00, and for such other and further relief as the Court deems just and equitable.

WHEREFORE, Sierra Bravo Corporation (d/b/a "The Nerdery") prays that judgment be entered in its favor against Music Dealers, Inc., and that the Court award costs and such other relief to Sierra Bravo as the Court deems just and proper.

## COUNT II
## (FRAUD)

15. Music Dealers incorporates by reference the allegations contained in Paragraphs I through 14 of its Complaint as if fully set forth herein.

**ANSWER:** Sierra Bravo incorporates its answers to the allegations in Paragraphs 1 through 14 as if fully set forth herein.

16. The Nerdery's statement to Music Dealers that it had an expert grasp of Drupal was a misrepresentations of fact as the Discovery Tool Upgrade delivered to Music Dealers by the Nerdery did not adhere to Drupal coding standards.

**ANSWER:** Sierra Bravo denies the allegations in Paragraph 16 of the Complaint.

17. Music Dealers would not have entered into the Contract had The Nerdery not possessed the claimed Drupal expertise because such expertise, which Music Dealers lacked, was required in order to design and develop the Discovery Tool Upgrade.

**ANSWER:** Sierra Bravo denies the allegations in Paragraph 17 of the Complaint.

18. The Nerdery knew that it did not have the Drupal expertise it claimed, which statement it thus knew to be false.

**ANSWER:** Sierra Bravo denies the allegations in Paragraph 18 of the Complaint.

19. Music Dealers relied on The Nerdery's aforementioned statements to its detriment by entering into the Contract.

**ANSWER:** Sierra Bravo denies the allegations in Paragraph 19 of the Complaint.

20. As a direct and proximate result of the Nerdery's statements, Music Dealers harmed when it entered into the Contract. In addition, the Nerdery billed an excessive amount of hours

developing the Discovery Tool Upgrade, which would not have been necessary if it had the level of expertise it represented to Music Dealers.

**ANSWER:** Sierra Bravo denies the allegations in Paragraph 20 of the Complaint.

WHEREFORE, Plaintiff, Music Dealers. LLC, prays that judgment be entered in its favor and against Defendant, Sierra Bravo Corporation, in an amount to be determined at trial, but in no event less than $50,000.00, and for such other and further relief as the Court deems just and equitable.

WHEREFORE, Sierra Bravo Corporation (d/b/a "The Nerdery") prays that judgment be entered in its favor against Music Dealers, LLC, and that the Court award costs and such other relief to Sierra Bravo as the Court deems just and proper.

## AFFIRMATIVE DEFENSES

1. Sierra Bravo did not breach or materially breach the Master Services Agreement ("Services Agreement") or the Scope of Work ("SOW") (collectively, the "Agreement"), which was the entire and integrated contract between Sierra Bravo and Music Dealers. The SOW included a summary and estimate of the project's features, development tasks, and milestones which were estimates only, subject to change, not a list of contractual requirements. The wireframe documents were developed as part of the design process. They were not part of the Agreement, and did not set forth or constitute contractual functionality requirements.

2. Section 7 of the Services Agreement sets forth an exclusive limited warranty under which Sierra Bravo "agrees to correct any defects in Software caused by source code or data developed or modified by [Sierra Bravo] at no charge for a period of thirty (30) days following the installation of such Software onto it[s] live Server." Music Dealers failed to satisfy – or give Sierra Bravo an opportunity to satisfy – this limited warranty.

    3.  Section 8 of the Services Agreement expressly excludes all other warranties (other than the limited warranty provided in Section 7): EXCEPT AS EXPRESSLY PROVIDED HEREIN, [SIERRA BRAVO] AND ITS AGENTS, OFFICERS, DIRECTORS, EMPLOYEES, SUCCESSORS, ASSIGNS, AND AFFILIATES PROVIDE THE SERVICES 'AS IS, WITH ALL FAULTS,' AND MAKE NO REPRESENTATIONS OR WARRANTIES OF KIND, EXPRESS OR IMPLIED, AND EXPRESSLY DISCLAIMS ALL WARRANTIES OF TITLE, MERCHANTABILITY, AND FITNESS FOR A PARTICULAR PURPOSE."

    4.  Section 9 of the Services Agreement constitutes a limitation-of-liability provision that excludes certain damages and caps Music Dealers's alleged damages at fees paid by Music Dealers for the three months preceding the alleged events giving rise to the claim: "TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW AND REGARDLESS OF WHETHER ANY REMEDY FAILS OF ITS ESSENTIAL PURPOSE, IN NO EVENT SHALL [SIERRA BRAVO] OR ITS AGENTS, OFFICERS, DIRECTORS, EMPLOYEES, SUCCESSORS, ASSIGNS, OR AFFILIATES BE LIABLE TO [MUSIC DEALERS] OR ANY OTHER PERSON FOR INDIRECT, INCIDENTAL, CONSEQUENTIAL, PUNITIVE, OR OTHER SPECIAL DAMAGES, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, LOSS OF DATA, LOST TIME, LOST SAVINGS, LOST CONFIDENTIAL OR OTHER INFORMATION, BUSINESS INTERRUPTION, OR FOR ANY MATTER ARISING FROM OR RELATED TO THIS AGREEMENT EVEN IF [SIERRA BRAVO] HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH LOSS OR DAMAGE. [SIERRA BRAVO'S] AGGREGATE LIABILITY FOR ANY CLAIMS ARISING OUT OF OR RELATING TO THIS AGREEMENT SHALL BE LIMITED TO THE AMOUNT PAID BY CLIENT TO

[SIERRA BRAVO] UNDER THIS AGREEMENT FOR THE THREE (3) MONTHS PRECEDING THE EVENTS GIVING RISE TO SUCH CLAIM."

5. Section 1 of the Services Agreement conditioned Sierra Bravo's provision of services under the Agreement on the payment by Music Dealers of the fees set forth in Section 4. Music Dealers, however, failed to pay all fees for Sierra Bravo's services as required by Section 4. The allegations in the counterclaims below are incorporated by reference herein.

6. Music Dealers is in material breach of the Agreement by failing to pay required fees. The allegations in the counterclaims below are incorporated by reference herein.

7. Music Dealers did not satisfy its duties to undertake the various tasks set forth in the SOW. The allegations in the counterclaims below are incorporated by reference herein.

8. Music Dealers failed to return the software as required by Section 12 of the Services Agreement. The allegations in the counterclaims below are incorporated by reference herein.

9. Sierra Bravo did not make any misrepresentation regarding "Drupal expertise" as alleged in Paragraph 16 of the Complaint. Any such alleged misrepresentation, moreover, is not actionable as a purported false statement of fact. Nor did or could Music Dealers reasonably rely on such an alleged statement.

## COUNTERCLAIMS FOR BREACHES OF CONTRACT

NOW COMES SIERRA BRAVO CORPORATION (d/b/a/ "THE NERDERY") ("Sierra Bravo"), by and through its attorneys, LEWIS BRISBOIS BISGAARD & SMITH, LLP., pursuant to Fed. R. Civ. P. 13 and other governing rules and case law, and for its Counterclaims for Breaches of Contract against MUSIC DEALERS, INC. ("Music Dealers"), states as follows:

## Parties, Jurisdiction and Venue

1. Sierra Bravo is a Minnesota corporation with its principal place of business in Minnesota. Music Dealers is an Illinois limited liability company, and all members are citizens of, and domiciled in, the State of Illinois: Eric Sheinkop, Jonathon Sheinkop, and Jonathan Williamson. This Court has jurisdiction over the parties and these Counterclaims pursuant to 28 U.S.C. § 1332, in that there is complete diversity between the parties and the matter in controversy exceeds $75,000.00 exclusive of interest and costs. This Court also has supplemental jurisdiction over the parties and these Counterclaims pursuant to 28 U.S.C. § 1367.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1339. Music Dealers resides in this District; a substantial part of the events or omissions giving rise to these Counterclaims occurred in this District; and Music Dealers is subject to personal jurisdiction in this District at the time this action is commenced.

## Statement of Facts

3. On or around July 19, 2011, Sierra Bravo and Music Dealers signed the Master Services Agreement ("Services Agreement"), a true and correct copy of which is attached as Exhibit A to Music Dealers's Complaint. The Services Agreement was a valid and enforceable contract.

4. Section 1 of the Services Agreement provided that, "Subject to the payment of the fees set forth in Section 4 hereunder, [Sierra Bravo] agrees to provide Services for Client as described in one or more Estimates, Proposals, Project Plans, or Statements of Work...."

5. On or around July 19, 2011, Sierra Bravo and Music Dealers signed the Scope of Work ("SOW"), a true and correct copy of which was attached as Exhibit B to the Complaint.

The SOW provided a summary and itemized estimate of the project's features and development tasks.

6. The SOW provided that "Joshua Burke is the main contact for Music Dealers." (Complaint, Exh. B, at p. 9.) The parties expected and intended that Mr. Burke, as "the main contact for Music Dealers," would be available and accessible to Sierra Bravo during the course of the project.

7. The SOW included "Project Milestones," which set forth a schedule that was "subject to change." The "Project Milestones" also set forth certain "Owners" of specified milestones, and Music Dealers was one of the "Owners" responsible for undertaking and completing the quality-assurance process.

8. The SOW also set forth "Assumptions" which included the following: "Potential iterations or changes to workflows and designs during the development process are not included in the project cost. Iterations or modifications to the design will result in additional costs and will exceed the project timeline." (SOW, Complaint, Exh. B, at p. 11.)

9. After the execution of the Services Agreement and SOW, Music Dealers expanded the scope of the project significantly. For example, Music Dealers demanded the development of additional features and functionality that were not set forth in the SOW.

10. Sierra Bravo responded to Music Dealers's demands by undertaking significant efforts – and incurring substantial costs and personnel time – to develop these new features and functionality that were out of the project's scope.

11. Music Dealers further demanded that Sierra Bravo develop these new and out-of-scope features and functionality in time for presentations scheduled by Music Dealers in London and Paris in September 2011.

12. Because of Music Dealers's demands for the development of out-of-scope features and functionality, Sierra Bravo incurred approximately 300 additional hours of development time. This additional time constitute "additional costs" that Music Dealers is obligated to pay Sierra Bravo under the SOW. (SOW, Complaint, Exh. B, at p. 11.)

13. After the presentations in September 2011, Music Dealers continued to demand additional features and functionality that were not identified in the SOW, which delayed the project and required Sierra Bravo to incur additional costs for which Music Dealers was liable. Despite those delays and additional costs caused by Music Dealers, Sierra Bravo successfully deployed the software on or around November 14, 2011.

14. Starting in or around September 2011, Music Dealers failed to make its Project Manager, Joshua Burke, accessible and available in connection with the project. Mr. Burke's lack of accessibility or availability caused the project to suffer additional delays, and caused Sierra Bravo to suffer additional costs in personnel time. In addition, as another result of Mr. Burke's lack of accessibility or availability, Music Dealers failed to participate adequately in the quality-assurance processes for which it was one of the "Owners" as set forth in the SOW. (SOW, Complaint, Exh. B, at p. 8.)

15. The contractual limited-warranty period was thirty (30) days from the date of installation. (Services Agreement, Complaint, Exh. A, at § 7.) The software was installed on November 14, 2011. The limited-warranty period, therefore, expired on December 14, 2011. On or before that date, December 14, 2011, Music Dealers did not invoke the limited warranty or seek relief thereunder.

16. On November 17, 2011, Sierra Bravo sent an invoice to Music Dealers in the amount of $17,365.20, consisting of amounts owed under the Services Agreement for services

performed within the scope of the project. Music Dealers, however, failed and refused to pay that invoice or any amount of the $17,365.20 owed to Sierra Bravo.

17. Notwithstanding its failures to pay as alleged above, Music Dealers has kept, and is using, the software delivered by Sierra Bravo.

18. Sierra Bravo satisfied all of its duties under the Services Agreement and the SOW.

### Breaches of Contract By Music Dealers

19. Sierra Bravo realleges Paragraphs 1 through 18 of its Counterclaims as if fully set forth herein.

20. Music Dealers materially breached the Services Agreement and SOW by, *inter alia*:

   (a) failing to pay Sierra Bravo's costs and fees for services performed outside the scope of the project;

   (b) failing to satisfy its duties as one of the "Owners" in connection with the quality-assurance process;

   (c) failing to pay invoices required under the Services Agreement; and

   (d) failing to return the software installed by Sierra Bravo.

21. Music Dealers's material breaches of contract, alleged above, have caused Sierra Bravo to suffer substantial damages of at least $100,000.00.

WHEREFORE, for the reasons set forth above, Sierra Bravo Corporation (d/b/a "The Nerdery") prays that judgment be entered in its favor against Music Dealers, Inc., and that the Court award Sierra Bravo damages of at least $100,000.00, as well as attorneys' fees, costs and such other relief to Sierra Bravo as the Court deems just and proper.

## JURY DEMAND

Sierra Bravo hereby demands a jury trial for all of the counts triable by a jury in these Counterclaims.

Respectfully submitted,

SIERRA BRAVO CORPORATION (d/b/a "THE NERDERY")

By: _____
One of Its Attorneys

Dated: September 26, 2012

Hillard M. Sterling, Esq.
ARDC No. 6232655
LEWIS BRISBOIS BISGAARD & SMITH LLP
550 W Adams, Suite 300
Chicago, IL 60661
(312) 345-1718 Telephone
(312) 345-1778 Facsimile
hsterling@lbbslaw.com

## CERTIFICATE OF SERVICE

    I, Hillard M. Sterling, certify that on September 26, 2012, I electronically filed through the CM/ECF system of the Northern District of Illinois, **SIERRA BRAVO'S ANSWER, AFFIRMATIVE DEFENSES, and COUNTERCLAIMS TO MUSIC DEALERS LLC'S COMPLAINT AT LAW,** and the following party was notified via electronic mail:

Elvis D. Gonzalez
Elvis Gonzalez, Ltd.
Three First National Plaza
70 W. Madison St., Suite 5050
Chicago, IL   60602

/s/ Hillard M. Sterling
Hillard M. Sterling

4851-0219-6239.14851-0219-6239.1